Anthony Barnes (Bar No. 199048)
Jason Flanders (Bar No. 238007)
AQUA TERRA AERIS LAW GROUP LLP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Phone: (415) 326-3173
Email: amb@atalawgroup.com

*Attorneys for Plaintiff*
HUMBOLDT BAYKEEPER

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBOLDT BAYKEEPER,<br><br>             Plaintiff,<br><br>     v.<br><br>HUMBOLDT SANITATION CO., a California corporation, HUMBOLDT RECYCLING, LLC, a California limited liability company.<br><br>          Defendants. | **Civil Case No.: 3:16-cv-06918-TEH**<br><br>**[Proposed] CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §1251 et seq.)** |

### CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Humboldt Baykeeper and Defendants Humboldt Sanitation Co. and Humboldt Recycling, LLC. The entities entering into this Consent Decree are and collectively referred to as "the Parties."

**WHEREAS**, Humboldt Baykeeper ("Baykeeper" or "Plaintiff") is an unincorporated non-profit association, dedicated to the protection, enhancement, and restoration of Humboldt County waterbodies and the habitat in and around Humboldt County waterbodies.

**WHEREAS**, Defendants Humboldt Sanitation Co. and Humboldt Recycling, LLC., duly organized and existing under the laws of the State of California, are collectively referred to herein as "Defendants";

**WHEREAS**, Defendants are the owners and operators of a transfer station facility in Humboldt County, California, ("the Facility") located at 2585 Central Avenue, in unincorporated McKinleyville, Humboldt County, CA 95519 with the Waste Discharge Identification ("WDID") number of 1 12I012825 and Classification ("SIC") Codes 5093, scrap and waste materials, and 4212 local trucking without storage.

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ ("Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342. These industrial activities include, transfer station facility operations comprising: collecting, receiving, sorting, baling and transferring waste, ferrous and non-ferrous scrap metal, recyclable materials, and construction and demolition debris, recycled landscape products and household waste; and equipment and vehicle storage and repair;

**WHEREAS**, Baykeeper contends that Defendants' operations at the Facility result in discharges into offsite drainage swales and culverts that flow into the Widow White Creek a tributary to the Mad River (collectively, the "Receiving Waters") and contends that those discharges are regulated by the

Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342 (a map of the Facility is attached hereto as **Exhibit A** and incorporated herein by reference);

**WHEREAS,** Defendants have applied for permitting to construct an approximately 9,950 square foot transfer/recycling building along with other structures to provide cover at the Facility, with construction of the approximately 9,950 square foot transfer/recycling building planned to commence in the fall of 2017.

**WHEREAS**, on September 27, 2016, Baykeeper served Defendants, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the North Coast Regional Water Quality Control Board, ("Regional Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Clean Water Act and the Storm Water Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility (a true and correct copy of Baykeeper's 60-Day Notice is attached as **Exhibit B** and incorporated herein by reference);

**WHEREAS**, on December 1, 2016, Baykeeper filed a complaint against Defendants alleging Defendants are in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS**, Defendants deny all allegations and claims contained in the 60-Day Notice and the Complaint and reserves all rights and defenses with respect to such allegations and claims;

**WHEREAS**, the Parties have agreed that it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1.   For the purposes of this Consent Decree, the Parties agree: 1) the Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. §

1365(a)(1)(A); 2) venue is appropriate in the Northern District Court pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place are located within this District; 3) the Complaint states claims upon which relief may be granted against Defendants pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365; 4) Plaintiff has standing to bring this action; and 5) the Court shall retain jurisdiction over this matter for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**OBJECTIVES**

**2.   Compliance with General Permit and Clean Water Act.** It is the express purpose of the Parties entering into this Consent Decree that throughout the Term of this Consent Decree, which is defined below in Paragraph 4, Defendants shall commence all measures needed to operate the Facility in full compliance with applicable requirements of the Storm Water Permit, and the Clean Water Act, subject to any defenses available under the law. All actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**EFFECTIVE DATE, AND TERM OF CONSENT DECREE**

**3.   Effective Date.** The Effective Date of this Consent Decree shall mean the day the Court enters the final Consent Decree following the Federal Agencies' review.

**4.   Term.** The Term of this Consent Decree shall run from the Effective date until July 1, 2020.

**COMMITMENTS OF DEFENDANTS**

**5.   BAT/BCT and Benchmark-Based Limits.** Contaminants in storm water shall not exceed the limits in Table 1, as follows: After the Effective Date, the exceedance of any two (2) Table 1 limits for storm water samples collected during the 2017-2018 reporting year from the Facility shall trigger the Action Plan requirements of Paragraphs 12 and 14. After June 30, 2018, and for the remainder of the Term of this Consent Decree, the exceedance of any one (1) Table 1 limit from the Facility shall trigger the Action Plan requirements of Paragraphs 12 and 14. Copper may be removed from the Consent Decree sampling parameters list following four consecutive samples with reported concentrations below the Table 1 limit.

**Table 1: Limits for Storm Water Discharges**

| Contaminant (All metals are total recoverable) | Test Method[1] | Limit |
|---|---|---|
| Copper | EPA 200.8 | .0332 mg/l |
| Zinc | EPA 200.8 | 0.26 mg/L |
| Lead | EPA 200.8 | 0.262 mg/L |
| Aluminum | EPA 200.8 | 0.75 mg/L |
| Iron | EPA 200.7 | 1 mg/L |
| Chemical Oxygen Demand | SM 5220C | 120 mg/L |
| Oil & Grease | EPA 1664A | 15 mg/L |
| Total Suspended Solids | SM 2540-D | 100 mg/L |

**6. Best Management Practices.** In addition to maintaining the current BMPs at the Facility, within forty-five (45) days of the Effective Date, unless otherwise noted, Defendants shall implement the BMPs identified in herein, as well as any other BMPs necessary to comply with the provisions of the Consent Decree, the Storm Water Permit and the Clean Water Act. Specifically, Defendants shall develop and implement BMPs to prevent and/or reduce contamination in storm water discharges from the Facility consistent with the use of the BAT and the BCT and in compliance with applicable water quality standards ("WQS").

**6.1**     Defendants shall construct an approximately 9,950 square foot transfer/recycling building, along with other buildings pursuant to Humboldt County Conditional Use Permit Case # PMS 05-008 CUP 05-008 at the Facility. Defendants shall commence grading and construction of the approximately 9,950 square foot transfer/recycling building as soon as practical, considering weather and contractor procurement, after final permitting approval, not to exceed to six (6) months.

**6.2**     Defendants shall install a series of curbed berms designed and implemented to prevent discharge of fugitive stormwater in:1) Drainage Area H fronting the North Ditch, and 2) along the Central Avenue Facility border.

---

[1] Test Methods from Table 2 of the 2014 General Permit.

**6.3** Following completion of the 9,950-square foot transfer/recycling building, Defendants shall complete a topographical survey no later than 45 days after building completion to identify areas still likely to be discharging fugitive stormwater. Subsequent to the topographic survey, Defendants shall either install additional curbed berms designed and implemented to prevent discharge of fugitive stormwater in areas identified in the topographical survey as likely to be discharging stormwater from the Facility, or add additional monitoring locations to the site map and facility SWPPP within 30 days of observing and verifying new discharge locations. Defendants shall provide Baykeeper a copy of the topographical survey within fifteen (15) days of receipt.

**6.4** Following installation of the curbed berms at the Facility under Paragraphs 6.2 and 6.3, Defendants shall provide a written report to Baykeeper evidencing successful or unsuccessful stormwater retention from the installation of the curbed berms within twenty (20) days of the first storm event resulting in at least 0.5 inches of precipitation in a 24-hour period, as recorded from the McKinleyville NOAA Weather Station[2] footnoted below.

**6.5** Defendants shall install inserts to the Drain Inlets at Drainage Area B, Drainage Area D and Drainage Area E that filter stormwater for pollutants reported above Table 1 Limits at the Facility, and allow stormwater sampling under this consent decree after stormwater has passed through the filter media. Replacement of Drain Inlet filter media shall be implemented on a regular schedule in accordance with the useful lifespan of the product(s), requiring replacement, at a minimum, at the midpoint of the Wet Season (on or about January 31), and again prior to the start of the subsequent Wet Season.

**6.6** During the Wet Season, Defendants shall increase the use of Filtrexx Fiber rolls, or similar media-filled wattles designed to remove metals from stormwater. A minimum of 60 linear feet of Filtrexx fiber rolls shall be placed at the Facility, around Drain Inlets, in down-gradient stormwater flow directions, and in areas affected by fugitive stormwater runoff. Replacement of Filtrexx fiber rolls shall be implemented on a regular schedule in accordance with the useful lifespan of the product(s), requiring replacement at the midpoint of the Wet Season (on or about

---

[2] https://www.ncdc.noaa.gov/cdo-web/datasets/GHCND/stations/GHCND:US1CAHM0004/detail

January 31), and again prior to the start of the next Wet Season. All Filtrexx fiber rolls shall be weighted down with sandbags during rain events to increase the surface and filter area of the fiber rolls.

**6.7**    Defendants shall remove the scrap and waste materials in Area 24, to prevent scrap metal and other junk and waste materials from contacting stormwater. Defendants shall then maintain the Facility free from exposed scrap metal and other waste materials.

**6.8**    Defendants shall implement more robust housekeeping measures, including, but not limited to, a sweeping program using a mechanical sweeper on all paved areas of the Facility, using a mechanical sweeper at least once per day, every business day, during dry weather. The mechanical sweeper shall be maintained in working order. To document compliance with this Paragraph, Defendants shall institute a daily sweeping log. Baykeeper shall have the right to inspect documentation related to sweeping during site inspections, and Defendants shall provide the documentation related to sweeping to Baykeeper with the Facility's Annual Report[3] within five (5) business days of the Annual Reports being submitted to the State's Stormwater Multiple Application and Reporting Tracking System (SMARTS) website.

**6.9**    Defendants shall place drip pans under idle vehicles. Idle vehicles means vehicles not in regular use at the Facility for more than fifteen (15) consecutive days at a time.

**6.10**    Defendants shall either remove idle/surplus equipment stored outside from the facility, or implement and maintain a system for continuous tarping and/or cover idle/surplus equipment stored outside at the Facility, using durable cover impervious to water. The cover shall be implemented to prevent stormwater from coming in contact with the equipment. Idle/surplus equipment means equipment not in regular use at the Facility for more than fifteen (15) consecutive days at a time.

**6.11**    Defendants shall cease bin washing activities at the Facility immediately before and during rain events to prevent commingling of process water and stormwater.

---

[3] The Storm Water Permit requires dischargers to submit Annual Reports no later than July 15th following each reporting year.

**6.12**    Defendants shall store any open bins or containers, with any material in them, in a covered area or take such other steps so as to prevent open bins or containers from coming into contact with rainfall or stormwater runoff, at the Facility. Any bins or containers stored outside shall either be covered or shall be empty and clean. A yard supervisor shall inspect the entirety of the Facility each business day during the wet season, and shall take all reasonable steps to ensure that all bins or containers have lids or covers and, prior to any rain event, are closed or covered.

**6.13**    Defendants shall sample and analyze stormwater discharges in Area 23 (truck storage) under this Consent Decree, pursuant to Table 1 and Paragraphs 12 and 13, adding the new Sample Point to the SWPPP prior to the 2017-2018 reporting year.

**6.14**    All maintenance, repair, and replacement activities relating to the stormwater pollution control measures contained in this Consent Decree shall be recorded and described on appropriate written records. Such records shall include, but not be limited to, any maintenance activities of any stormwater impoundment or collection equipment and filter roll repairs and/or replacements. The written records for each wet season shall be kept with the written records required under the Facility's SWPPP and shall be provided to Baykeeper with the Facility's Annual Report no later than July 20th following the 2017-2018 and 2018-2019 reporting years, and separately, with written records up to date through June 15, 2020, no later than June 30, 2020 for the 2019-2020 reporting year.

**7.**   Defendants shall not unilaterally abandon or modify any of the BMPs described above without prior consultation with Baykeeper. Defendants' failure to consult with Baykeeper prior to eliminating a BMP or altering or a BMP or schedule for implementation, as described herein, shall constitute a breach of this Agreement. Any failure to comment on the proposed modifications by Baykeeper, shall not be deemed to constitute agreement with the proposals or be deemed to construe a waiver of any of Baykeeper's rights or remedies under this Consent Decree. Consultation pursuant to this section shall not constitute an Action Plan as described in Paragraph 14 of this Consent Decree, or be deemed to waive any of Defendants' obligations with respect to the Action Plan.

**8.   Visual Observations.** During the life of this Consent Decree, Defendants shall continue to conduct visual observations at each discharge location during scheduled operating hours at the Facility,

monthly during dry weather, as outlined in the SWPPP and "Storm Water Permit," and separate monthly wet weather inspection during the wet seasons.

**9.   Employee Training Program.** Defendants shall implement a scheduled employee training program. Defendants shall log these meetings with the date, materials covered, and a list of attendees for each, and shall retain these logs with the SWPPP. The employee trainings shall include: 1) semi-annual meetings of the Storm Water Pollution Prevention Team, to be held at or near October 1 and at or near February 1, each Wet Season, so as to ensure the sampling analysis and visual monitoring is properly conducted and reported in the Annual Report; 2) On or near October 1 of each year of the Consent Decree Defendants shall train industrial activity related employees on the BMPs included in this Consent Decree and the SWPPP to ensure that BMPs are implemented effectively and on schedule and structural BMPs are maintained properly. Defendants shall train individual industrial activity related employees on their specific responsibilities in implementing BMPs. The training must include proper handling (including collection, storage and disposal) of all potential pollutant sources at the Facility; and 3) On or near October 1 of each year of the Consent Decree Defendants shall train industrial activity related employees at the Facility on the Storm Water Permit's prohibition of non-stormwater discharges, so that employees know what non-stormwater discharges are, that non-stormwater discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-stormwater discharges.

**10. Storm Water Pollution Prevention Plan.** Within thirty (30) days of the Effective Date, Defendants shall amend the Facility's SWPPP to incorporate the requirements and BMPs set forth in Section X of the Storm Water Permit and Paragraphs 6.1 through 6.14 of this Consent Decree, and submit the updated SWPPP to Baykeeper within ten (10) business days thereafter. Baykeeper shall have thirty (30) days from receipt of an amended SWPPP to propose any changes to the SWPPP. Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, Defendants shall make all of Baykeeper's changes to the amended SWPPP, or shall justify in writing (including email) why any comment is not incorporated.  Compliance with the SWPPP, as amended in accordance with this Paragraph, shall, at all times, be a requirement of this Consent Decree. Defendants shall revise the Facility's SWPPP if there are any material changes in the Facility's operations, including, but not

limited to, changes to stormwater discharge points or BMPs. These SWPPP revisions shall occur within thirty (30) days of the changes in operations.

**11. Future Storm Water Pollution Prevention Plan Amendments.** Defendants shall provide Baykeeper with a copy of any amendments to the Facility SWPPP made during the Term of the Consent Decree within ten (10) days of such amendment being uploaded to the State's SMARTS website.

**12. Sampling Frequency and Additional Sample Point at the Facility.** During the term of this Consent Decree, Defendants shall collect and analyze samples from four (4) Qualifying Storm Events ("QSE")[4] from the Facility, at all sampling points identified the Facility's SWPPP, plus at an additional Sample Point for discharge from Area 23 (truck storage lot, as further detailed in Paragraph 6.13). This additional Sample Point will be added to the Facility's SWPPP. If Defendants receive stormwater sampling data demonstrating exceedances of a Table 1 Limits at the Facility, in accordance with Paragraph 5 above, during the term of this Consent Decree, Defendants shall provide Baykeeper with an Action Plan in compliance with the "Action Plan" requirements set forth below in Paragraph 14 of this Consent Decree.

**13. Sampling Parameters.** Each of the stormwater samples collected pursuant to Paragraph 12 of this Consent Decree shall be analyzed for each of the constituents listed in Table 1. As indicated in Paragraph 5, copper may be removed from the Consent Decree sampling parameters list following four consecutive samples with reported concentrations below the Table 1 limit. The stormwater analysis shall be done by a laboratory accredited by the State of California. Samples collected from the Facility shall be delivered to the laboratory as soon as possible to ensure that sample "hold time" is not exceeded. Analytical methods used by the laboratory shall be adequate to detect the individual constituents at or below the limits specified in Table 1. Defendant will provide analytical laboratory reports to Baykeeper within fifteen (15) days of Defendants' receipt of the laboratory report from each sampling event pursuant to the Notice provisions of Paragraph 40 herein.

**14. Action Plan.** Defendants agree to submit an Action Plan to Baykeeper following the conclusion of each reporting year: by August 1, 2018, and August 1, 2019, and should an Action Plan be required

---

[4] "Qualifying Storm Events" under the Storm Water Permit is any precipitation event that: (a) Produces a discharge for at least one drainage area; and, (b) Is preceded by 48 hours with no discharge from any drainage area.

from sampling conducted in the 2019-2020 reporting year, by July 1, 2020. The Action Plan will be submitted: 1) if required pursuant to Paragraphs 5 and 12; or 2) if Defendants fail to collect and analyze samples from the number of QSE required in Paragraph 12 above, or 3) if Defendants fail to comply with any other requirements of the Storm Water Permit. The Action Plan shall comply with the following requirements: Defendants shall prepare a detailed, written statement discussing and describing the exceedance(s) or failure to collect and analyze samples from the required number of QSE, the possible cause(s) and/or source of the exceedances or failure(s), and additional measures that will be taken to address and eliminate future exceedances and/or failures to collect (the "Action Plan"). Such additional measures may include, but are not limited to: 1) further material improvements to the storm water collection and discharge system, 2) changing the type and extent of storm water filtration media or modifying other industrial activities or management practices at the Facility, 3) changing the type and frequency of Facility sweeping.

**15. Additional Measures.** Such additional measures under an Action Plan, to the extent reasonably feasible, shall be implemented within sixty (60) days after the due date of the Action Plan. Within thirty (30) days of implementation, the Facility's SWPPP shall be amended to include all additional BMP measures designated in the Action Plan.

**16. Baykeeper Review of Action Plan(s).** Baykeeper may review and comment on an Action Plan and suggest any additional pollution prevention measures it believes are appropriate within thirty (30) days of receipt of any Action Plan under this Consent Decree; however, Baykeeper's failure to do so shall not be deemed to constitute agreement with the proposals set forth in the Action Plan. Defendants shall not be obligated to perform any of the pollution prevention measures Baykeeper may recommend (subject to dispute resolution in Paragraphs 23 and 24), but shall give good faith consideration to those measures, and provide a written explanation as to why Defendants declined to implement those additional pollution prevention measures. Upon request by Baykeeper, Defendants agree to meet and confer in good faith (at the Facility, if requested by Baykeeper) regarding the contents and sufficiency of the Action Plan.

**17. Site Inspections.** In addition to any site inspections conducted as part of the settlement process and the meet-and-confer process concerning an Action Plan as set forth above, Defendants shall permit

representatives of Baykeeper to perform up to two (2) physical inspections at the Facility during the term of this Agreement. These inspections may be performed by Baykeeper's counsel and consultants and may include sampling, photographing, and/or videotaping. All sampling shall be conducted by qualified samplers, with split samples collected by both Baykeeper and Defendants at the time of sampling. Baykeeper shall provide Defendants with a copy of their sampling reports, photographs and/or video within a reasonable time after the site inspection, not to exceed fourteen (14) days after Baykeeper's receipt of any sampling reports from split samples, and seven (7) days after the site inspection, for photographs and/or video. Baykeeper shall provide at least seventy-two (72) hours advance notice of such physical inspection, except that Defendants shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals. In such case, Defendants shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by Baykeeper may proceed. Defendants shall document any alterations to the Facility conditions related to stormwater management during the period between receiving Baykeeper's initial advance notice and the start of Baykeeper's inspection that Defendants would not otherwise have made but for receiving notice of Baykeeper's request to conduct physical inspections of the Facility. The documentation shall include the date the alterations related to stormwater management were planned and/or scheduled, the date of the issuance of any purchase order and/or maintenance order, if any, for the alterations, and the date the alterations were implemented. Nothing herein shall be construed to prevent Defendants from continuing to implement any BMPs identified in the SWPPP during the period prior to an inspection by Baykeeper or at any time.

**18. Defendants' Communications with Regional and State Boards.** During the Term of this Consent Decree, Defendants shall provide Baykeeper with copies of all documents and communications submitted to the Regional Board or the State Board concerning BMPs, stormwater or stormwater discharges from the Facility, or compliance with Storm Water Permit or the Clean Water Act. These documents and communications shall include, but are not limited to, all documents and reports submitted to the Regional Board and/or State Board as required by the Storm Water Permit, and all correspondence between the Regional Board or the State Board and the Defendants or their agents. Such

documents and reports shall be provided to Baykeeper pursuant to the Notice provisions of Paragraph 40 herein contemporaneously with Defendants' transmission of said documents to the Regional Board or the State Board.

### MITIGATION, COMPLIANCE MONITORING AND FEES AND COSTS

**19. Mitigation.** As mitigation of the Clean Water Act violations alleged in Baykeeper's Complaint, Defendants agree to pay the sum of Twenty-Seven Thousand Five Hundred ($27,500) to the Mad River Alliance for projects to improve water quality, environmental habitats, and ecosystems, in the Mad River Watershed. The mitigation payment shall be made directly to the Mad River Alliance and sent to P.O. Box 1252 Blue Lake, CA 95525 Attn: Dave Feral. The Mad River Alliance shall provide notice to the Parties within ten (10) days of a decision upon when and how the funds will be applied to better the water quality, environmental habitats, or ecosystems, in the Mad River Watershed. The payment shall be sent within seven (7) calendar days of the Effective Date.

**20. Stipulated Payments.** Defendants shall pay the following stipulated payments during the Term of this Consent Decree.

    **20.1**    $1000 for each failure to collect a sample required under this Consent Decree during the Wet Season beginning with the 2017-2018 Wet Season;

    **20.2**    $250 per day after the report due date for each failure to timely submit any document, report or other communication required in this Consent Decree; save for technical issues with regard to submissions to the State's SMARTS website.

    **20.3**    $250 per day for every day past the due date that Defendants fail to submit any payments due under Paragraphs 19, 21, and 22 of this Consent Decree.

    **20.4**    Any stipulated payments described above shall be paid to Mad River Alliance within thirty (30) days of notification of the failure to comply. Baykeeper shall forgive stipulated payments up to two (2) times, if Defendants corrects the failure within ten (10) days of notification of failure to comply.

**21. Baykeeper's Litigation Costs.** To partially reimburse Baykeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating this Consent Decree, Defendants shall pay a total of

Forty-Seven Thousand Five Hundred Dollars ($47,500). The payment shall be made within thirty (30) days of the Effective Date. The payment shall be made via wire transfer or check, made payable to: "ATA LAW GROUP" and delivered by overnight delivery, unless payment via wire transfer, to: ATA Law Group, 828 San Pablo Ave., Ste. 115B, Albany, CA 94706.

**22. Compliance Monitoring and Oversight.** Defendants agree to partially defray Baykeeper's reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring of Defendants compliance with this Consent Decree in the amount of Ten Thousand Dollars ($10,000). Payment shall be made within thirty (30) days after the Effective Date. Compliance monitoring activities may include, but shall not be limited to, reasonable investigative, expert, consultant and attorneys' fees and costs, site inspections, review of water quality sampling reports, review of annual reports, discussions with representatives of Defendants concerning any Action Plan(s) referenced above, potential changes to compliance sampling and analysis, and compliance-related activities. The payment shall be made via wire transfer or check, made payable to: "ATA LAW GROUP" and delivered by overnight delivery, unless payment via wire transfer, to: ATA Law Group, 828 San Pablo Ave., Ste. 115B, Albany, CA 94706.

## DISPUTE RESOLUTION

**23. Jurisdiction of the Court.** The Court shall retain jurisdiction over this matter for the life of the Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the authority to enforce this Consent Decree with all available legal and equitable remedies, including contempt. Within five (5) days the Effective Date, the Parties shall file with the Court a Stipulation and Order providing that the Complaint and all claims therein shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

**24. Meet and Confer.** If a dispute under this Consent Decree arises or the Parties believe that a breach of this Consent Decree has occurred, the Settling Parties agree to meet and confer:

**24.1**     A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Parties of the matter(s) in dispute. The Parties shall schedule a meet and confer (either telephonically or in person) within ten (10) days from the date of the notice. The

Parties may elect to extend this time in an effort to resolve the dispute without mediation or court intervention.

**24.2**     If the Parties fail to meet and confer, or cannot resolve a dispute through the informal meet and confer process, the Parties hereby agree to submit the dispute to a mediator at the San Francisco office of JAMS, for a mediation hearing to be held within thirty (30) days following the failed meet and confer. Defendants shall pay all costs of any mediation hearing directly to JAMS. In the event that the Parties cannot resolve the dispute within thirty (30) days of mediation, the Parties agree that the dispute may be submitted for resolution by filing a motion before the United States District Court for the Northern District of California.

**24.3**     The Parties shall be entitled to seek fees and costs incurred in any such dispute resolution procedure or action, and/or additional mitigation payments to the Rose Foundation, to remedy the alleged breach(es) of the Consent Decree, pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §§ 1319, and 1365(d), and applicable case law interpreting such provisions.

**24.4**     In any dispute resolution procedure or action, Defendants bear the burden of proof with regard to compliance with the Consent Decree and the Storm Water Permit.

**MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

**25. Baykeeper's Waiver and Release.** Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases Defendants, their officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint up to the Effective Date.

**26. Defendants' Waiver and Release of Baykeeper.** Defendants, on their own behalf and on behalf of their officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or

pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint up to the Effective Date.

## MISCELLANEOUS PROVISIONS

**27. No Admission of Liability.** Neither this Consent Decree, the implementation of additional BMPs or any payment pursuant to the Consent Decree shall constitute or be construed as a finding, admission, or acknowledgement of any fact, law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

**28. Submission of Consent Decree to DOJ.** After agreement of the Parties to this proposed Consent Decree, Baykeeper will submit this Consent Decree to the United States Department of Justice and the national and Region IX offices of the United States Environmental Protection Agency for the statutory review period pursuant to 33 U.S.C. § 1365(c) of at least 45 days prior to the submittal of this Consent Decree to the Court for entry. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within thirty (30) days.

**29. Early Termination.** If Defendants should cease industrial operations at the Facility and file a Notice of Termination ("NOT") under the Industrial Stormwater Permit prior to the termination date of this Consent Decree, Defendants shall send Baykeeper a copy of the proposed NOT concurrent with its submittal to the Regional Water Board. Within ten (10) days of the Regional Water Board's approval of the NOT, Defendants shall notify Baykeeper in writing of the approval and remit all outstanding payments, including stipulated payments, to Baykeeper. In the event a new successor or assign continues industrial operations at the site and assumes responsibility for implementation of this Consent Decree pursuant to Paragraph 39, Defendants shall notify Baykeeper within ten (10) days of the transition.

**30. Execution in Counterparts and Signatures.** The Consent Decree may be executed in one of more counterparts, which, taken together, shall constitute one original document. The Parties' signatures to this Consent Decree may be electronic or original, and whether transmitted by courier, mail, email or facsimile, shall be deemed binding.

**31. Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and Paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

**32. Authority to Sign.** The undersigned representatives for Baykeeper and Defendants certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree, which have been read, understood and agreed to.

**33. Integrated Consent Decree**. All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

**34. Severability.** In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**35. Choice of Law.** This Consent Decree shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

**36. Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter.

**37. Negotiated Agreement.** The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

**38. Modification of the Agreement.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Parties.

**39. Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

**40. Notice.** Unless otherwise stipulated to by the receiving party, any notices or documents required or provided for by this Consent Agreement or related thereto that are to be provided to Baykeeper pursuant to this Consent Agreement shall be sent via electronic mail to the email addresses listed below:

Jennifer Kalt, Director
 Mailing Address:
600 F Street, Suite 3 #810
Arcata, CA 95521
jkalt@humboldtbaykeeper.org

Anthony M. Barnes
Aqua Terra Aeris Law Group LLP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Phone: (415) 326-3173
Email: amb@atalawgroup.com

Any notices or documents required or provided for by this Consent Agreement or related thereto that are to be provided to Defendants pursuant to this Consent Agreement shall be sent via electronic mail to the email addresses listed below:

Tasha Eisner
Vice President
Humboldt Sanitation & Recycle
PO Box 2812
McKinleyville, CA 95519
Email: teisner@humboldtsanitation.com

Allison G. Jackson,
Harland Law Firm LLP
622 H Street
Eureka, California 95501
(707) 444-9281
Email: ajackson@harlandlaw.com

Each Party shall promptly notify all other Parties of any change in the above-listed contact information.

**41. Force Majeure.** No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any circumstances beyond the Party's reasonable control, including, without limitation, any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24-hour storm event, or inability to pay. Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure.

The Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

APPROVED AS TO CONTENT

Dated: _____, 2017      By:_____
                                         Jennifer Kalt, Director
                                         Humboldt Baykeeper

Dated: ___6/ 9____, 2017           By:_____
                                         Tasha Eisner, Vice President
                                         All Defendants

APPROVED AS TO FORM

                                   AQUA TERRA AERIS LAW GROUP

Dated: _____June 12_____, 2017   By:_____
                                         Anthony M. Barnes
                                         Attorneys for Plaintiff

Dated: ___6/12____, 2017           By:_____
                                         Allison Jackson
                                         Attorneys for Defendants

**Good cause appearing, IT IS SO ORDERED.**

                                   **UNITED STATES DISTRICT COURT
                                   NORTHERN DISTRICT OF CALIFORNIA**

Dated: ____8/3/2017____, 2017      _____
                                         Honorable Thelton E. Henderson

APPROVED AS TO CONTENT

Dated: _____6/14_____, 2017     By: _Jennifer L Kalt_____
                                    Jennifer Kalt, Director
                                    Humboldt Baykeeper

Dated: _____6/ 9_____, 2017     By: _Tasha R C_____
                                    Tasha Eisner, Vice President
                                    All Defendants

APPROVED AS TO FORM

                                AQUA TERRA AERIS LAW GROUP

Dated: ____June 12____, 2017    By: _____
                                    Anthony M. Barnes
                                    Attorneys for Plaintiff

Dated: _____6/12_____, 2017     By: _____
                                    Allison Jackson
                                    Attorneys for Defendants

Good cause appearing, IT IS SO ORDERED.

                                **UNITED STATES DISTRICT COURT**
                                **NORTHERN DISTRICT OF CALIFORNIA**

Dated: _____, 2017      _____
                                Honorable Thelton E. Henderson

[Proposed] CONSENT DECREE          19          Case No. 3:16-cv-06918-TEH

APPROVED AS TO CONTENT


Dated: _____, 2017       By:_____
                                        Jennifer Kalt, Director
                                        Humboldt Baykeeper


Dated: _____, 2017       By:_____
                                        Tasha Eisner, Vice President
                                        All Defendants

APPROVED AS TO FORM

                                   AQUA TERRA AERIS LAW GROUP


Dated: _____, 2017       By:_____
                                        Anthony M. Barnes
                                        Attorneys for Plaintiff




Dated: _____, 2017       By:_____
                                        Allison Jackson
                                        Attorneys for Defendants




**Good cause appearing, IT IS SO ORDERED.**


                                   **UNITED STATES DISTRICT COURT**
                                   **NORTHERN DISTRICT OF CALIFORNIA**


Dated: _____, 2017       _____
                                        Honorable Thelton E. Henderson